Milford Canning Company, an Illinois Corporation, Plaintiff-Appellee, v. Central Illinois Public Service Company, an Illinois Corporation, Defendant-Appellant.

Gen. No. 11,695.

Second District, First Division.

February 19, 1963.

259

Fleming & McGrew, of Watseka, and Stevens, Herndon, Nafziger & Mohan, of Springfield, for appellant.

Milliken, Vollers & Parsons, of Chicago, for appellee.

McNEAL, P. J.

A jury returned a verdict in favor of plaintiff Milford Canning Company and against the defendant Central Illinois Public Service Company for damages allegedly incurred as a result of an interruption of electrical service supplied by defendant for plaintiff's canning factory. The Circuit Court of Iroquois County entered judgment on the verdict, and also ordered plaintiff's attorney's fees to be taxed as costs against defendant. This appeal followed.

The complaint in this case contained three counts and alleged that plaintiff operated a canning factory and at all times exercised due care; that defendant supplied plaintiff with electricity and was negligent, among other things, in installing and maintaining a 200-ampere fuse in its transformer bank outside plaintiff's factory; that as a proximate result of the failure of the fuse, a power stoppage occurred at 10:50 p. m., August 23, 1960, requiring destruction of a large amount of corn in process of being canned, to plaintiff's damage in the amount of $25,000. In count III plaintiff cited Sections 32 and 73, Chapter 111⅔, Ill Rev Stats, 1959, which require public utilities to furnish adequate equipment and impose liability upon such utilities for damages caused by violation of the statute. Plaintiff charged defendant with negligence in failing to provide adequate instrumentalities and equipment. Defendant's answer denied that it was negligent, denied that plaintiff exercised due care and charged that the service interruption was caused by a double ground or short in plaintiff's plant.

260

The evidence at the trial showed that the fuse in question was a 200-ampere fuse and that it was installed in 1956 to replace a 150-ampere fuse. Plaintiff presented evidence that it had added a number of motors to its plant since installation of the 200-ampere fuse, and that defendant had knowledge of this fact. Each year the amount of corn canned per hour increased. Defendant was further advised that plaintiff's usage was nearing 700 kilowatts. Plaintiff also presented evidence that the fuse in question contained tin and that its ability to carry its rated capacity would be decreased by previous high currents, by increases in temperature and by time in usage. Plaintiff presented further evidence that its power factor was 50 or 60 per cent and that at the time the fuse in question blew, plaintiff could have been using 250 amperes or more. Plaintiff also presented evidence that it is normal to install a fuse larger than necessary in order to avoid nuisance tripping. At the time the fuse blew, the weather was hot and the plant had been running all day. Only defendant's fuse blew; the fuses in plaintiff's lines did not blow. No double grounds were found in plaintiff's plant and after the old fuse was replaced with a new one, no other fuses blew and all equipment operated properly. Subsequently, a 300-ampere fuse was installed. Plaintiff's evidence regarding damages was uncontradicted and tended to show damages in excess of $14,000.

Defendant produced evidence that plaintiffs' power factor was not as low as 50 or 60 per cent, that plaintiff was not using as much electricity as it claimed, that the 200-ampere fuse was adequate, that a 200-ampere fuse will carry 275 amperes for 24 hours without deterioration, and that the damage was caused by a short circuit in plaintiff's plant.

Based upon the foregoing evidence, the jury returned a verdict for plaintiff in the amount of $7613.97, and

on April 13, 1962, judgment was entered on the verdict. Defendant filed its post-trial motion on May 10, and on May 28 plaintiff filed a motion to tax its attorney's fees as a part of the costs under section 73 of the Public Utilities Act. On May 29 the court denied the post-trial motion and heard testimony on plaintiff's motion for fees. Notice of appeal was filed on June 15, and on June 29, 1962, the court awarded plaintiff $4000 for attorney's fees.

█ Defendant contends that it was entitled to a directed verdict. The familiar rules governing courts in determining this question were restated in Sollars v. Blayney, 31 Ill App2d 341, 347, 176 NE2d 477, and the following language was used in a leading case upon the subject, Lavender v. Kurn, 347 US 645, 90 L Ed 916, 923:

> "It is no answer to say that the jury's verdict involved speculation and conjecture. Whenever facts are in dispute or the evidence is such that fair-minded men may draw different inferences, a measure of speculation and conjecture is required on the part of those whose duty it is to settle the dispute by choosing what seems to them to be the most reasonable inference. Only when there is a complete absence of probative facts to support the conclusion reached does a reversible error appear. But where, as here, there is an evidentiary basis for the jury's verdict, the jury is free to discard or disbelieve whatever facts are inconsistent with its conclusion. And the appellate court's function is exhausted when that evidentiary basis becomes apparent, it being immaterial that the court might draw a contrary inference or feel that another conclusion is more reasonable."

The evidence in the case at bar was in sharp dispute. The defense presented substantial evidence that the fuse was adequate, but the plaintiff presented substantial evidence that the fuse was inadequate. The evidence presented a question for the jury.

██ Defendant also contends that it is entitled to a new trial because the verdict is manifestly contrary to the weight of the evidence. While it is true that the refusal of a trial court to grant a new trial is subject to review, yet the trial court's decision will not be reversed unless there has been a clear abuse of discretion. Hulke v. International Mfg. Co., 14 Ill App2d 5, 47, 142 NE2d 717. Weighing the evidence is primarily the function of the jury and the courts should not interfere unless the verdict is manifestly or obviously wrong. It is not enough that the court may disagree with the verdict. In the case at bar we cannot say that the verdict was manifestly against the weight of the evidence, or that the trial judge abused his discretion in denying the motion for a new trial.

█ Complaint is made that the court erred in refusing defendant's instruction 4, which charged that "defendant was not an insurer or a guarantor . . . but . . . was only under a duty to use ordinary care . . ." This instruction is argumentative in that it emphasizes that defendant was not an insurer, and minimizes its duty to exercise ordinary care. The tendered instruction is not included in Illinois Pattern Jury Instructions. The trial court gave IPI 10.01 for plaintiff and IPI 10.02 and 21.02 for defendant. These instructions adequately and properly covered defendant's duty to use ordinary care. The court committed no reversible error in refusing defendant's instruction 4.

■ ■ More serious objections are advanced against plaintiff's instruction 4, which reads as follows:

"There was in force in the State of Illinois at the time of the occurrence in question a certain statute which provided that:

" 'Every public utility shall furnish, provide and maintain such service instrumentalities, equipment and facilities as shall promote. the safety, health, comfort and convenience of its patrons, employees and public and as shall be in all respects adequate, efficient, just and reasonable.'

"For a ground of recovery the plaintiff has the burden of proving that the defendant violated this statute on the occasion in question, and that plaintiff suffered damage as a result.

"If you find that either of these propositions has not been proved, your verdict should be for the defendant, but if you find that both of these propositions have been proved, your verdict should be for the plaintiff."

■ ■ It will be noted that this instruction is peremptory, i. e. it directs a verdict. It is important that such an instruction be accurate, particularly in a case such as the one at bar wherein the evidence was close and highly conflicting. This instruction directs a verdict for plaintiff if plaintiff proved a statutory violation which resulted in damage. It does not require plaintiff to prove due care; it does not require that the statutory violation constitute negligence; and it does not require that the negligence be a proximate cause of the damage. The instruction completely omits all of these essential elements. These objections to plaintiff's instruction 4 were particularly specified by defendant's counsel at the conference on instructions and they were repeated in defendant's post-trial motion. The law is settled that errors in a peremptory

instruction cannot be cured by other instructions. Kelly v. C. Iber & Sons, Inc., 17 Ill App2d 388, 399, 150 NE2d 372. The statute could have been called to the attention of the jurors by use of IPI 60.01, and the objections to the instant instruction would have been obviated. While we are reluctant to reverse a case because of error in instructions, yet the instruction in question completely omits the requirement of proving due care, negligence and proximate cause and constitutes a complete departure from the allegations of plaintiff's complaint and the theory upon which the case was tried. Inasmuch as this case will be tried again, it is not necessary to pass upon the question of plaintiff's attorney's fees.

By reason of the errors contained in plaintiff's peremptory instruction 4, it is our conclusion that the judgment entered below should be and it hereby is reversed, and this cause is remanded for a new trial.

Reversed and remanded.

DOVE and SMITH, JJ., concur.